UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DURAN THOMAS,

            Plaintiff,

            v.                                        Case No. 25-cv-1316-bhl

CO HUNT,
CO PHILLIPS, and
CAPT ROSS,

            Defendants.

---

## SCREENING ORDER

---

Plaintiff Duran Thomas, who is currently serving a state prison sentence at Green Bay Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that Corrections Officers Hunt and Phillips and Captain Ross violated his civil rights. This matter comes before the Court on Thomas' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Thomas has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Thomas has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has paid an initial partial filing fee of $71.10. Thomas' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Thomas, on March 2, 2025, at about 5 p.m., Officer Hunt handed out bagged meals. Thomas asserts that inside his bag, along with his food, he found a pen. Thomas states that he called out to Hunt to let her know she had given him a pen, but she did not acknowledge him and continued to hand out bagged meals to the other prisoners. Thomas states that, a short while later, he "became disturbed with thoughts of serious self harm with the pen" after he discovered a metal spring inside the pen.

The next day, Thomas allegedly communicated his thoughts of self-harm to psychological services via a request slip, but time passed, and no one came to speak to him. Just before 11 p.m. on the night of March 3, 2025, Thomas asserts that he began to use the metal spring "to repeatedly rip holes in the skin tissue of his left forearm until after a while there was a deep 2" laceration that was painful and bled profusely." About an hour later, while Thomas was allegedly still harming himself, Officer Phillips conducted a round. Thomas asserts that Phillips looked in his cell, saw him bleeding and harming himself with the pen spring, and walked away without intervening.

Not long after, at about midnight on March 4, 2025, another officer was doing count when she noticed Thomas engaging in self-harm. Thomas alleges that she radioed Sgt. Race, who came to Thomas' cell and asked him what he was doing. According to Thomas, Race instructed him to stop and eventually removed Thomas from his cell. Race allegedly reported to Captain Ross that Thomas had engaged in self-harm and needed medical and psychological help. Thomas asserts that he was treated by someone from the health services unit for his injury and placed in psychological observation until he could be seen by psychological services staff. Thomas states

that Ross inaccurately reported his misconduct to psychological services by stating that Thomas had "engaged in self-directed violence via scratching his arm with a staple."

### THE COURT'S ANALYSIS

Prison officials can be held liable if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Their duty extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). With this standard in mind, the Court will allow Thomas to proceed on an Eighth Amendment claim against Phillips but not Hunt or Ross.

Thomas alleges that Phillips walked away after he observed Thomas engaging in self-harm. This allegation allows a reasonable inference that Phillips may have been aware that Thomas was engaging in self-harm and then disregarded it.

Thomas does not, however, state a claim against Hunt, whom he alleges handed out a bagged meal with a pen inside. Although the restricted housing rules do not allow for inmates to have pens, there is nothing inherently dangerous about a pen. Indeed, even Thomas acknowledges that it was not until later that he thought about misusing the pen to harm himself. In any event, Hunt's failure to realize that she had lost the pen (assuming it was her pen) and/or consider that whoever found the pen might misuse it amounts at most to negligence, which does not support a constitutional claim. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1970) ("deliberate indifference describes a state of mind more blameworthy than negligence").

Nor does Thomas state a claim against Ross who reported to psychological services that Thomas had scratched his arm with a staple rather than reporting that Thomas had cut his arm with

a tiny spring. Ross informed psychological services that Thomas had engaged in self-harm, so the Court cannot reasonably infer that Ross was deliberately indifferent to Thomas' injury. Moreover, Ross' description of *how* Thomas harmed himself appears to have had no impact on the care Thomas received. Thomas acknowledges that health services treated his physical injury and that he was placed in observation status until he could be evaluated by someone from psychological services. Accordingly, Thomas suffered no harm. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'").

**IT IS THEREFORE ORDERED** that Thomas' motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Thomas fails to state a claim against CO Hunt and Capt. Ross, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Thomas' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on CO Phillips.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, CO Phillips shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Thomas is located.

**IT IS FURTHER ORDERED** that the agency having custody of Thomas shall collect from his institution trust account the $278.90 balance of the filing fee by collecting monthly payments from Thomas' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Thomas is transferred to another institution, the transferring institution shall forward a copy of this Order along with Thomas' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Thomas is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 26th day of November, 2025.

s/Brett H Ludwig<br>
BRETT H. LUDWIG<br>
United States District Judge